*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. SCHUDLICH, Minor.

UNPUBLISHED
September 17, 2025
10:46 AM

No. 373334
Genesee Circuit Court
Family Division
LC No. 21-137416-NA

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child, JS, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), MCL 712A.19b(3)(g) (failure to provide proper care and custody despite financial ability), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. FACTS

In May 2021, the child's two older half-siblings were taken into care after respondent strangled one of them and engaged in a standoff with the police. As a result of this incident, respondent pleaded no contest to aggravated domestic violence and attempted assaulting or resisting a police officer. In October 2021, the child was born at home. Respondent almost immediately became aggressive with Children's Protective Services (CPS) workers, accusing them of being a joke and refusing to cooperate with them. In August 2022, respondent strangled

---

[1] The trial court did not terminate the parental rights of JS's mother, Jessica Frezza. This appeal concerns only JS and respondent-father, but the case began before JS was born with a petition to remove JS's two older half siblings, GF and HF, from Frezza's care. Frezza is the mother of all the children mentioned in this case; respondent-father is not the father of GF and HF. A younger fourth child, SS, born in April 2023, was also later removed from Frezza's care. Respondent-father was a putative father of SS but never established paternity to her.

the child's mother while she was holding the child. Thereafter, the child was taken into care and placed with respondent's brother, who was a licensed foster parent.

Throughout this case, respondent engaged in an extraordinary and persistent degree of combativeness, defiance, aggression, selfishness, and lack of accountability. Respondent blamed the child whom he strangled, the children's mother, the agency, foster care workers, his lawyers, his brother, and anyone who was involved in his case. Respondent hung up on case workers, canceled scheduled home visits, and refused to sign safety plans, agency agreements, and documents indicating that the child could get a haircut or obtain services for developmental delays. Respondent claimed to be illiterate, but there was no evidence supporting as much. Additionally, respondent was ultimately represented by four different attorneys in this case because he continually asked for their dismissal.

Respondent partially participated in services by completing an anger management class and a domestic violence class as well as participating in counseling, but he continued to have explosive and aggressive reactions to workers. Respondent eventually participated in drug screens, and the results were consistent with what he claimed were his prescribed medications. Respondent also participated in a parenting class, but he continued to act inappropriately at his parenting-time visits, to the point that after he was given his own dedicated room at the agency, and after the agency needed to have two workers on hand and sometimes the director, the trial court finally suspended his parenting time. Notably, the child's doctor also required a worker to be present because of respondent's aggressive behavior, and respondent instigated altercations with his brother, the child's foster placement.

Respondent completed a psychological evaluation, in which he was diagnosed with bipolar disorder with possible psychotic features, meaning he had the possibility of losing touch with reality. Despite being asked to obtain a neurological and a psychiatric evaluation, respondent never provided proof of either.

The trial court, citing respondent's history of combative, aggressive, and defiant conduct throughout the case, found that there was clear and convincing evidence that a statutory basis existed for terminating respondent's parental rights and that termination was in the child's best interests. For some unknown reason, the trial court delayed issuance of its opinion for more than five months after the termination hearing. Respondent now appeals.

## II. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding statutory grounds to terminate his parental rights.[2] We disagree.

---

[2] Respondent cursorily argues that petitioner failed to make reasonable efforts toward reunification, asserting that the agency offered generic services but failed to provide individualized services to address his bipolar-disorder diagnosis. Respondent fails to explain how petitioner should have tailored its services to his needs beyond a conclusory statement that petitioner did not

## A.  PRESERVATION AND STANDARD OF REVIEW

The trial court addressed and decided whether sufficient evidence was presented to establish a statutory ground for termination; therefore, this issue is preserved.  See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014).  "A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination listed in MCL 712A.19b(3) have been proven by clear and convincing evidence."  *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012).  We review the trial court's determination for clear error.  *Id*.  "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made."  *Id*. at 41 (quotation marks and citation omitted).  "We give deference to the trial court's special opportunity to judge the credibility of the witnesses."  *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

## B.  ANALYSIS

On appeal, respondent challenges the trial court's termination of parental rights under MCL 712A.19b(3)(c)(*i*), MCL 712A.19b(3)(g), and MCL 712A.19b(3)(j).  If we conclude that the trial court did not clearly err by concluding that one statutory ground for termination existed, then we do not need to address the additional grounds for termination.  *Id*. at 461.

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate parental rights when 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."  In this case, the record evidence supports the trial court's finding that the conditions that led to adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time given the child's young age and the length of time that he was out of respondent's care.

The initial dispositional order was entered on October 13, 2022, and the termination hearing began on April 4, 2024; therefore, 540 days had elapsed since the initial dispositional order was issued, and the first part of MCL 712A.19b(3)(c)(*i*) was clearly met.

Termination is proper when "the totality of the evidence amply supports that [respondent] had not accomplished any meaningful change in the conditions existing by the time of the adjudication."  *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).  "A parent's failure to participate in *and benefit from* a service plan is evidence that the parent will not be able to

---

adequately address his bipolar diagnosis.  Moreover, respondent did not raise this issue in his statement of questions presented.  Therefore, we deem this issue abandoned.  See *In re Rippy*, 330 Mich App 350, 362 n 5; 948 NW2d 131 (2019) (explaining that an issue is deemed abandoned if it is insufficiently briefed on appeal or not raised in the statement of questions presented). Regardless, respondent was repeatedly urged to obtain a neurological evaluation, a psychiatric evaluation, and outpatient treatment, most of which he either failed to pursue or failed to document, so he did not uphold his own obligation to participate in *and benefit from* services.

provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (emphasis added).

In this case, respondent had a lengthy history of domestic violence, including acts of physical and verbal aggression against the child's mother and older half-brother. Although respondent *partially* participated in some services—including an anger management class, a domestic violence class, a parenting class, supervised parenting time, counseling, drug screening, and a psychological evaluation—many of which he only engaged in right before the termination trial, respondent: (1) failed to provide proof of a neurological or psychiatric evaluation, and (2) failed to *benefit* from his service plan.

Throughout this case, respondent engaged in an extraordinary and persistent degree of combativeness, defiance, aggression, selfishness, and lack of accountability. Respondent blamed others for the position that he was in; hung up on case workers; canceled scheduled home visits; and refused to sign safety plans, agency agreements, and documents indicating that the child could get a haircut or obtain services for developmental delays. Respondent claimed to be illiterate, but there was no evidence supporting as much. Additionally, respondent was ultimately represented by four different attorneys in this case because he continually asked for their dismissal. Respondent continued to have explosive and aggressive reactions to workers, and respondent's inappropriate behavior at his parenting-time visits required a dedicated room and ample supervision. Notably, the child's doctor also required a worker to be present because of respondent's aggressive behavior, and respondent instigated altercations with his own brother, who served as the child's foster placement. Therefore, the trial court did not err by finding that respondent failed to benefit from the services in this case.

Additionally, MCL 712A.19b(3)(c)(*i*) requires the trial court to find that respondent would be unable to rectify the conditions within a reasonable time. "[T]he Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). The determination of what constitutes a reasonable time for the conditions to be rectified includes how long it would take for the parent to improve his or her parenting skills and how long the child can wait for the parent's improvement. *Id*. at 648.

In this case, the child was about eleven months old when he was placed with respondent's brother in foster care, and the child was nearly two and a half years old when the termination trial began. Therefore, the child had already been out of respondent's care for 23 months—more than half of his life. Considering the amount of time that had passed since the opening of this case, respondent's lengthy history of domestic violence, and respondent's inability to show that he benefited from services, the trial court did not clearly err by finding that respondent would be unable to rectify the conditions that led to adjudication in a reasonable time.

Accordingly, the trial court's findings pursuant to MCL 712A.19b(3)(c)(*i*) were not clearly erroneous, and the trial court did not err by terminating respondent's rights on this basis. Given this conclusion, we need not address the remaining statutory grounds relied upon in this case. See *In re HRC*, 286 Mich App at 461.

## III. BEST INTERESTS

Respondent also argues that the trial court erred by finding that termination was in the child's best interests. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

The trial court addressed and decided the question of the child's best interests; therefore, this issue is preserved. See *In re TK*, 306 Mich App at 703. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40. "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review the trial court's determination for clear error. *In re Olive/Metts Minors*, 297 Mich App at 40.

### B. ANALYSIS

"In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. A child's "placement with a relative weighs against termination, but that fact is not dispositive." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 11. "Furthermore, the court *may* utilize the factors provided in MCL 722.23." *In re Medina*, 317 Mich App 219, 238; 894 NW2d 653 (2016) (quotation marks and citation omitted). At the best-interest stage of the proceeding, the trial court's focus is on the child, not the parent. *In re Moss*, 301 Mich App at 88-89.

On appeal, respondent argues that: (1) the trial court failed to consider his bond with the child, (2) the child's placement with a relative weighed against termination, (3) the domestic violence incident involving the child's older brother "constituted a single albeit alarming event," and (4) respondent should have been offered access to additional mental health services and more time.[3]

In this case, the trial court addressed the child-custody best-interest factors in MCL 722.23. Its lengthy findings under those factors encompassed the considerations prescribed in *In re Olive/Metts Minors*, *In re White*, and *In re MJC*.

---

[3] As previously stated, respondent's reasonable-efforts argument is abandoned. See *In re Rippy*, 330 Mich App at 362 n 5. Regardless, respondent was repeatedly urged to obtain a neurological evaluation, a psychiatric evaluation, and outpatient treatment, most of which he either failed to pursue or failed to document, so he did not uphold his own obligation to participate in services.

Notably, the trial court clearly acknowledged that respondent loved and had emotional ties to the child. The trial court considered that the child was in a relative placement, but correctly explained that although that fact weighed against termination, it was not "prohibitive to termination of parental rights." See *In re MJC*, ___ Mich App at ___; slip op at 11. The trial court also correctly noted that the record detailed *numerous* incidents of domestic violence, and explained that "[a] review of the record shows Respondent Father simply failing to work within the service plan, with his counsel, with the placement, with the court, or with anyone involved in this case." Considering the amount of time that had passed since the opening of this case, respondent's lengthy history of domestic violence, respondent's inability to show that he benefited from services, as well as the child's age, progress, and safety in his current placement, the trial court did not clearly err by finding that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney